Nasir Mohamed v. Sessions I've allowed the time granted to Mohamed to be shared I of the amicus you may proceed thank you your honor may it please the court Andrew Wachtenheim from the immigrant defense project for the amicus IDP appears today to present argument on the conviction finality rule an issue that substantially affects the vulnerability to deportation for lawful permanent residents eligibility for relief from removal and exposure to federal criminal prosecution and sentencing enhancement the Immigration and Nationality Act contains a statutory term conviction codified at section 1101 a 48a of title 8 that statutory term is defined in two parts the first part is the subject of this case the meaning of the statutory phrase a formal judgment of guilt of the alien entered by a court first time that at least in the immigration context Congress defined the term conviction yes judge prior to 19 the statutory term was was entered into the INA by Congress through night through 1996 legislation prior to 1996 the statutory term conviction was defined by the Board of Immigration Appeals in its 1988 opinion in matter of Oscar and a matter of Oscar the the Board of Immigration Appeals adopted the position the position that a conviction is defined in part as a formal judgment of guilt entered by entered by a court and that has three the position of the board was that that had three requirements first a finding of guilt second the imposition of a sentence and third the exhaustion or waiver of all appellate remedies and this was the exact context in which or backdrop against which Congress legislated a statutory definition of conviction in 1996 and so the and so looking at the statutory text the context of the legislation and then any applicable rules of statutory construction reveal that the intent of Congress in legislating a definition of the term conviction was to retain a finality requirement which means do that if the text is ambiguous right well you you've looked at all these other sources to manufacture an ambiguity but we should be looking at this the text of the statute to see if it's ambiguous on its face right yes judge and I believe it's ambiguous about it so the what this court this court's recent decision in Tanvir look to the Supreme Court's precedent in Robinson Shell to instruct us is how to identify ambiguity in a statute and when and how to apply the rules of statutory construction and so and what we look at we look at the plain language of the text which we would acknowledge does not reveal whether there is a finality requirement but the decision in Tanvir also tells us to look at the con the context of the context of the statute and the statute as a whole and when doing so we see we we see that there there is a whole but there's a body of decisional law that Congress was a is presumed to have been aware of when it legislated the term conviction and and that instructs us that the that the statutory term retains a finality requirement but even if even if at that initial step the court were to conclude that the text of the statute in the context of the legislation we're not were did not tell us whether there remains a finality requirement after IRA at that point we would apply this canons of statutory construction including an examination of the legislative history if you just look at the text term conviction means a formal judgment of guilt of the alien entered by court that part that doesn't say anything about a appeal or right to appeal a direct appeal as a as a right doesn't say anything about that so why can't we stop there and look I'm sympathetic don't get me wrong but I think that the law is currently what it is why don't we just stop there you talk about context and so on but that's pretty clear that phrase is Congress took that phrase from the board's definition board's decision in matter of Oscar a formal judge judgment of guilt that a court had entered and in Oscar the board explained that that ink that that includes both that includes a finding of guilt the imposition of the sentence and then went on to explain that that also requires the exhaustion or waiver of all appellate remedies and so the Board of Immigration Appeals for decades had understood that if that a formal judgment of guilt entered by a court includes this finality requirement and this court in Puello similarly in similarly tells us that the the term conviction and the term formal judgment of guilt is not self-defining as one might be as one might want to conclude in Puello and footnote one this court told us that a formal judgment of guilt requires more than just than just the finding of finding of guilt it also requires the imposition of a sentence which is similarly not found in the statutory text and so the results of this new definition by Congress in 1996 and as I understand it it was really largely designed to remedy this issue relating to deferred adjudications correct yes judge so why isn't the result of this new definition that Congress intended to treat formal adjudications and deferred adjudications the same the same so namely no you know we're not going to wait for in the issue with a problem with the fact that there are no immediate appeals in the context of deferred adjudications correct I believe in the context of deferred adjudications the the issue that Congress sought to resolve was not really about whether there were remaining appeals but whether there was any kind of remaining procedure before the trial court in order for a deferred adjudication to convert to deferred adjudication as Congress understood in 1996 an alien who was who had the benefit so to speak of deferred adjudication didn't have to appeal but that could you know so the finality issue could result in a situation where there was no final adjudication is that correct is that what Congress was trying to remedy Congress was trying to remedy across treatment of deferred adjudications because the procedures for a deferred adjudication and how they take place and how they're resolved was highly variable across the states and so a non-citizen who was given a deferred adjudication in Maryland would the imposition of immigration consequences would differ if that person were in Maryland or if they'd been adjudicated there been a deferred adjudication in Nevada at the under the 96 definition at the point that the deferred adjudication converts to converts to a formal judgment of guilt if there are any remaining appellate remedies that someone who were the initial disposition was a deferred adjudication if there are remaining direct appeals as of right then it is the same it is the treated the same way as a formal judgment of guilt there remains a finality requirement I see that I'm over time may it please the court my name is Paul Grotus and I'm here today on behalf of the petitioner I'm gonna restrict my oral argument to the issues of withholding of removal and the particular serious crime issue I'm on for the petitioner I would like to state that the immigration judge committed a violation on my client's fundamental due process right when he stated that my client failed to submit country conditions evidence this was such an egregious error because the immigration judge specifically stated on the record the court must consider relevant State Department reports and then he goes on to state the respondent submitted another report which the court will address below in this decision this misstatement is directly contradicted by the immigration judge statement on page 56 of the record on page 56 the immigration judge says so we have B&C which is the country conditions report this immigration judge misstatement directly affects my client's eligibility for relief from removal what what is the status of his appeal his appointed counsel mr. Ronald Zapata from appellate defenders and what's the status is a briefing is it is it close I mean one of the issues is that in a brave we remanded but then it ended up being moot yes your honor so the appeal was decided so what's the status of his appeal where are we sure my client has committed a he has a 440 attack on his appeal that 440 has been denied he's made a motion to the appellate division to join his appeal of his direct conviction and to join the appeal of his call the denial of his collateral attack and it is still pending you say it's still pending has there been any briefs been submitted no your honor at the best of my knowledge from his appellate defender mr. Zapata briefs have not been submitted this is in the state court yes your honor and we have no idea of how fast cases move or how slow based on my experience your honor the state court does move extremely slow when dealing with appeals of criminal issues did that figure into the first issue that we discussed finality if it's slow if it's a slow grinding process your honor I think it should figure into the issue in one specific regard the BIA in matter of Montiel has said that there should be some fact-finding regarding what the merits of the appeal and none of that was done in this matter so I don't think it's appropriate for this court to make findings of fact that haven't been made in the courts below however the BIA in a different matter totally or in a different interpretation of this same matter has said that the court below must undergo that fact-finding analysis thank you you've reserved two minutes we'll hear from the government may it please the court Rebecca Hoffberg Phillips on behalf of the United States Attorney General there's I'm just gonna pick up right where he left off I will say if the court would like to know the status of the state court proceedings that is really not before the court and I'd really like to stick with the record that is before the court but at the same time I understand this court's concern and it was the complete lack of information about that appeal from the government's perspective that has been the continuous thread of this case if the government had been presented with the right kind of evidence at the right time the proceedings may have gone about differently this is evident from the very beginning when the immigration judge is asking for information about what's going on in the state court now saying that if he had provided sufficient evidence about an actual appeal you would have proceeded differently well your honor actually under matter of Montiel which was decided and I'll get to that in a moment that sets forth the criteria that's really gonna be shown to as to whether or not there's going to be administrative closure which I'll get to in a minute but at the immigration judge stage which predates the matter of Montiel the immigration judge is asking for evidence of what is going on he didn't even know the petitioner didn't know if it was a 440 motion or a direct appeal there was no evidence presented to the immigration judge so the image he just said I have nothing to do with this offense he wasn't even clear about what crimes he'd been arrested for he seemed to really be denying any involvement in this criminal sale of the heroin even though there was conviction records that were used in the particularly serious crime finding that actually were casting doubt on a lot of his statements yes he had said in response to those questions I have a pending direct appeal how would you have proceeded differently oh well your honor if he has a pending direct appeal he should have asked for his problem was before the board when he simply asked for remand just showing that his untimely appeal had been accepted the board was provided no other and this is in the board's decision the theory of administrative closure the theory of government has in the context of a direct appeal but your honor as you mentioned before you expressed a little bit of sympathy as to maybe how the statute takes away the appeal rights the board has created this workaround from my perspective because since this court's decision in Puello I understand it's very clear by the statutory language that there is actually no ability to exhaust an appeal before a conviction is held against you and I know Judge Pooler you were on the panel in Alejo which specifically affirmed that finding and to so to say that it was purely dicta in that case is is really not fair when you have a case that came out right afterwards or within the next year specifically relying on Puello if a if a if a an applicant is removed while an appeal is pending well your honor that I think that was the board's concern as well and that's why the administrative closure remedy was specifically created a matter of Montiel the board laid out the criteria relying on a matter of a vitician saying here's what you can show if you have a direct appeal pending we'd like to know what are the factors that you would like us to consider for as an administrative convenience to avoid the hassle of bringing someone back and to avoid yes language in the board has a way to allow an appeal to continue your honor I think this court saw in matter of Cardenas a brew that there was some differing opinions among the board and in that decision the board was understanding of the fact that the plain language of the statute said what it said but recognizing it had this prior precedent on the issue the problem in that case was there was an untimely reinstatement of appeal as actually was in this case and the board treated it differently from a direct appeal which was simply incorrect problem is it went back to the board by the time it got back to the board the issue was moot because the appeal had been denied we never got a we have maybe two choices well we have some what you just said why why why isn't this given what you just heard and given what you now know about the existence of a pending appeal why isn't this subject to an administrative closure well your honor I've been wondering all along why he hasn't sought it before the board he reached out to my colleague in 2016 saying we're gonna file a motion of you be open with the actually tell you this that last week the 440 appeal was denied I don't know the council he seemingly is unaware of it but I've been trying to get to the bottom of the state court proceedings the directive the ability to seek an untimely appeal of the 440 denial you see there's a confusing set of circumstances here and and this is exactly why the finality rule is necessary in this case he was convicted in 2014 I'm sorry 2013 2013 we're going on five years and his direct appeal is still pending however what happened was he did not timely appeal he sat on the ability didn't didn't do that then got a reinstatement of his appeal in 2014 then waited three years to seek appointment of counsel which he finally received in 2017 now the New York State Court won't dismiss a case no matter how long it sits this is what I've learned they also don't have pacer so that the government cannot keep track of what's going on so you can you can trot out the parade of horribles but before 1996 this is the rule and things worked out that's right but since 1996 there's an express definition and judge Pooler recognized in a recent decision that Puello stands for the proposition that you cannot use legislative history to try to create an ambiguity in a statute when the language in the text is clear as your honor pointed out that is the end of the matter there's no room for Chevron deference in a case where the statutory language is clear and unambiguous and so the problem here is that you try to rely on a prior board interpretation that maybe I've misunderstood and Pooler asked a question that I also have so it seems that the government has actually embraced this rule of exhaustion in an act of discretion is that correct and in why are we here we're here because the Puello you agree is dicta yeah judge Pooler's decision is a summary order well Puello might be dicta in terms of its ultimate conclusion was a different conclusion but in analyzing the statute as unambiguous with respect to the definition of conviction being unambiguous then your honor that means that it's a clear text statute and the fact of the matter is is that the the board may have had a prior interpretation but if the court which followed Puello we described the language Puello that you're relying on as dicta well you said that the court had suggested something and that was again an unpublished order your honor so we have a lot of unpublished decisions here that are not exactly authoritative when it comes to saying what Puello meant or did authoritative at all right so this court has the ability to affirm Puello in this particular context to make clear exactly what Puello did or did not say based on the plain language of the definition of conviction but keeping in mind that what the board has done since matter of a brew the board has had several instances I think to including in matter of Montiel the board had the opportunity at that point to try to fashion another interpretation of the definition of conviction and the board specifically declined to do so possibly with in mind the fact that every single circuit court with the exception of the Third Circuit in a Robbie has come to the exact same conclusion which is the text is clear it says what it says a conviction is a conviction for immigration purposes as long as there's a trial court judgment in place seems to me that we have two questions here one is what we can do with for Mr. Mohamed and the other is whether we want to issue second circuit law that's binding all you've cited to us are summary orders which have no presidential value as you of course know so can we get Mr. Mohamed a chance to put before the BIA or the IJ wherever this case is the information on his appeals on his pending appeals well your honor it has always been his ability to file this motion to reconsider it is not for the court to do it is always been his ability we actually thought that he would have filed something we asked repeatedly for a status update on the case this was my colleague back in 2016 there's a series of emails where we never got the information to make an about what our position might be and whether that even matters when you're before the court your honor what's interesting is that in the immigration record I would tell you at page 89 he references Mr. Grotus as the attorney handling his criminal appeal at the time that his case was before the immigration judge now I don't know why no evidence was presented to the immigration judge I don't know why any evidence other than a single order which didn't say anything about maybe what the arguments for example matter of Montiel they were looking maybe it's a facially frivolous appeal that we don't worry about waiting for or worrying about administrative closure and they noted that it was a jury trial as opposed to here we had a guilty plea we also have evidence in the record where he admits that he sold heroin to an undercover cop in the form of his arguments as to why his crime is not particularly serious so you essentially have this admission of guilt where normally we don't look to the end on the categorical approach and matching elements we don't like to go behind the record of conviction and try to determine what is the likelihood that he was wrongly convicted or has a valid appeal the problem in this case for him is that in the particularly serious crime context we are allowed to go beyond the elements we are allowed to look at the circumstances to see whether it's particularly serious we have him arguing well I only sold heroin to an for his conviction which is criminal sale of a controlled substance and and and in this case I think it was a little bit of a tough pill to swallow for the board to say well we're getting this order that your appeal well it's been reinstated but the fact is we don't know how are you planning to challenge your appeal and this is what matter of Montiel is looking at is it a facially frivolous appeal what might you be arguing under the circumstances that we because we do as you know we also on the Second Circuit have got this administrative closure process yes your honor why can't we hold this in a bantz while you work this out well your honor the fact is that this is a this was originally in that case yes your honor and I have no control over whether it's argued or not that I know yes but the fact of the matter is is that this is a case for finality and the fact that it's the petitioners burden it always has been to come forward with the board in a motion to reopen or a motion to reconsider with evidence it has to be that way because he is in the best position to know what is going on in his case I had to jump through several hoops to find out the status of this case it is without a pace or docket in the New York State Court it's it's quite difficult for the government to be in the position to keep track of a state court proceeding and not only that but that's exactly the reason why we have the rules that we do because Congress understood the impracticality of the government chasing down state court proceedings to find out what is the likelihood of success it has like too much information frankly is your point I'm not sure I didn't lead with it but we should just resolve the statutory interpretation issue and we're done or are you saying more your honor we the government believes that under Puello the court has the ammunition it needs to state that there is no ability to wait for an exhaustion of a direct appeal before determining that a conviction is final for immigration purposes I don't know about ammunition what we want to find we're just interpreting a statute we're calling balls and strikes so if we conviction is final for immigration purposes then you move on to did he raise a colorable legal or constitutional claim and under matter of Ortiz Franco that includes also the cat deferral claim and he is raised an issue that was clearly addressed in our brief in terms of did the immigration judge review the evidence here and the answer is that the immigration judge misspoke at one point and said that something wasn't submitted actually seemingly reviewed all of the evidence and then he never showed any prejudice in terms of what was in the record that the immigration judge didn't review that supports his case and so without going into the underlying facts of this case because the court is prohibited from doing so under 1252 a to C and 1252 a to D only leaves legal and constitutional claims no violation of due process here contrary to my counsel's assertion he was given lots of process there was an point is squarely presented and if we were to rule for example against mr. mom and we there would be a clear circuit split there already is a circuit split and Supreme Court can deal with it your honor that is true we have the Ninth Circuit's decision in Plains outlines where the courts have fallen on this and matter of a Robbie you know it recognizes that it's it's the outlier and there's a dissent in matter of Iraq I mean I'm sorry not matter in the Robbie Third Circuit decision yes so there is a dissent that clearly points out where the disagreement is yes yes there is your honor and the other courts that have had any meaningful decision on the meaning of conviction have understood it to have eliminated the finality requirement and had it actually be a those are by the Third Circuit get to appeal and before they are removed that is the state of the law it it it does create a disparity your honor the issue has not yet been taken up by the Supreme Court and the government encourages this court to follow the overwhelming majority of the courts that have decided the issue and this court's decision in Pueblo which would support that position argument hardly ever works with the Second Circuit I'm sorry that argument hardly ever works with the Second Circuit I can't the court cannot dispute that the majority of the circuits though have right necessarily don't follow no that's this court is is free to decide this case presents the exact reason why the finality rule is so important as we go on to the fifth year of a pending appeal with little to no information and absolutely no action before the agency on the part of petitioner thank you thank you your honor counsel is there information that you could have but hasn't haven't yet submitted your honor before I answer that question I wanted to point out something in the record on page 137 prior counsel submitted a motion to remand to the client's counsel agreed to seeking from the Board of Immigration Appeals to remand this case from the BIA to the immigration judge and surprisingly the BIA immigration judge the BIA the BIA despite both parties concurrence on what actions take in this case denied that motion and had they granted that motion we would not be here before this court today is that the remand pursuant to that's a separate note an independent remand what page page 137 Department of Homeland Security non-opposition to the respondents motion to remand so because I sort of believe and I believe listening to opposing counsel that those kind of motions lead to something called administrative closure I think I think it leads to is the confusing part from opposing counsel she's at the same time advocating two arguments it seems on the one hand she's advocating for remand so that we can get to the bottom of the facts it seems on the other hand she's advocating for a universal rule that my client has no ability to pursue his appeal while in the United States and that he should be deported and pursue any appellate remedies from his home country I think that's really where the confusing thing and I honestly don't know from listening to what she said what she wants this court to do I would yield the rest of my rebuttal time to amicus counsel thank you so you heard of the argument that the overwhelming majority in this nation is in favor of the Ninth Circuit position as opposed to the Third Circuit yes I an inaccurate representation of the state of the law it is certainly the case that the Ninth Circuit has held that the conviction finality rule did not survive ira-ira the Third Circuit squarely broke with the ninth and the Irabi decision in 2014 and it's our position that the sixth has joined the third and that no other no other court has resolved the question we've addressed those cases on page 12 of our brief no other court has resolved that question in a presidential opinion yes judge and that a number of the decisions that the that the government relies on as standing forced as as supporting its position actually arose in a different context and did not hold that the that the conviction finality rule has been eliminated the only circuit is the Ninth Circuit that squarely held in a decision contrary to the position you want us to adopt I believe so judge yes and judge Katzmann just got it wrong in dictum I believe I believe so and I and doubt that doubt that statement was dicta and that issue was not presented in the Puello case and I would imagine that that argumentation was not presented or briefed that perhaps the panel would have reached a different conclusion had had had it had all the is particularly relevant to this court's consideration because it speaks directly to the question of statutory ambiguity it looked to the meaning of the phrase formal judgment of guilt and found that that the court's precedent that the court's precedent the precedent of other circuits meant that you one needs to read into that statutory term in order to understand how far it is in the state adjudicatory process one gets before before a formal judgment of guilt has been entered as that term is defined in the Immigration Nationality Act and the court in Puello found that it that it at least got as far as the imposition of a sentence which is not present in the statutory text so Puello at least gets us to the point that the statutory that the statutory term conviction is ambiguous and then we resort to the canons of statutory construction all of which compelled the conclusion that the finality rule Thank you. Thank you all. Nice argument.